**1162**

Mrs. Leola McDONALD and
Mrs. Tommie Washington

v.

The MARLIN INDEPENDENT SCHOOL
DISTRICT, Superintendent Sam Gray,
and School Board Members.

No. W-69-CA-39.

United States District Court,
W. D. Texas,
Waco Division.

Nov. 10, 1969.

Weldon H. Berry, Houston, Tex., for plaintiffs.

Minor L. Helm, Jr., Sleeper, Boynton, Burleson, Williams & Johnston, Waco, Tex., for defendants.

## MEMORANDUM OPINION

ROBERTS, District Judge.

On September 10, 1969 the plaintiffs filed their complaint in this Court under 42 U.S.C. § 1983, jurisdiction being invoked under 28 U.S.C. § 1343(3). Both Mrs. McDonald and Mrs. Washington are Negro elementary school teachers and have respectively eighteen and thirty-three years of public school teaching. Both were employed in Booker T. Washington Elementary School in the Marlin Independent School District. The essence of the plaintiff's petition is that the Defendants refused to renew the plaintiff's teaching contracts because of plaintiffs' race and color. The plaintiffs further allege that the Board's decision not to renew their contracts was based solely on the Board's unwillingness to assign Negro teachers to schools attended by white pupils. In their prayer the plaintiffs asked for a speedy hearing and upon that hearing an injunction against the defendants requiring the Board and its agents to offer to the plaintiffs contracts for the 1969–70 school year.

In their answer the defendants denied any racial prejudice as a factor in their decision not to rehire the plaintiffs. Furthermore, the defendants have asserted a number of affirmative defenses: (1) the plaintiffs have failed to exhaust their state administrative remedies as provided by Articles 2656 and 2686, Vernon's Ann.T.S.; (2) the Texas Educa-

tion Agency reduced the Marlin School District's allotment of teachers from 98 to 90, thus necessitating a reduction and shifting of personnel; (3) the Marlin School District has white teachers teaching in predominantly colored schools, and colored teachers teaching in predominantly white schools; (4) the defendants were unsatisfactory teachers in that they failed to follow instructions of their superiors, had difficulty maintaining the attention of their pupils, were frequently irritable, and had difficulty getting along with their fellow workers.

In response to the plaintiffs' request for a speedy hearing, one was scheduled on October 22, 1969. Both parties were notified that this hearing before the Court was on the merits and would be decided after the introduction of all the evidence; defendants' motion to dismiss was carried through the hearing.

At the hearing both the plaintiffs and the defendants agreed to stipulate in open court that the only issue before the Court was whether the defendants failed to renew teaching contracts with the plaintiffs because of their race and color. Upon this issue both parties were given an opportunity to introduce evidence, including both live witnesses and various records.

The only evidence proffered by the plaintiffs was their own testimony. The plaintiffs testified that as far as they knew their competency as teachers was never questioned; however, no evidence whatsoever was introduced by the plaintiffs to show that racial prejudice was a factor in the defendants' failure to renew contracts with the plaintiffs. At the close of this testimony, the plaintiffs wanted to reserve the right to include in the record various school board records showing the process of integration in the Marlin School District. The defendants offered to introduce the minutes of the school board meetings at which the problem of integration was discussed and all other information, records, and documents showing the process of integration in Marlin. The plaintiffs agreed that this was fair enough.

Sam Gray, Jr., the Superintendent for the Marlin School District, was the defendants' first witness, and he testified that in matters of re-hiring the school board usually followed the recommendations of the superintendent, who in turn followed the recommendations of the principals. Mr. Gray testified, however, that he did know of instances when the school board would reverse itself and overrule the superintendent after an appeal to the school board by a teacher.

Mr. Gray also testified that in matters of integration there had been substantial progress both in student and teacher integration. He testified that there were about 385 Negro students in predominantly white schools, that white teachers taught in predominantly Negro schools, and that about 20 percent of Marlin's Negro teachers taught in predominantly white schools.

The defendants' second witness was a Mr. George Crider, the principal of Commerce Elementary School where the plaintiffs taught. Mr. Crider testified that as principal he had an opportunity to observe the plaintiffs and that based upon his observations he concluded that the two teachers were not competent enough to re-hire. After consulting with Mr. Joel McGregor, the Principal of the elementary schools, Mr. Crider accordingly recommended that their contracts not be renewed. He did, however, recommend that the contracts of the other 25 teachers in Commerce Elementary School be renewed, 20 of whom were Negroes.

Pursuant to the agreement of both the parties at the beginning of the hearing, the defendant has sent to the Court official records and other information concerning integration in the Marlin School District. According to this information, 383 Negro students are now attending former all white schools; 13 Negro teachers, out of a total of about 50, are presently assigned to former all white faculty schools; 10 white teachers, out of a total of about 80, are assigned to former all Negro faculty schools. Finally, 7 Negro teachers were employed

as new teachers for the System for the current school year, and 3 of such colored teachers were employed to replace white teachers. It should be noted here that Mr. Crider, according to his own testimony, attempted to recruit Negro teachers after recommending that the plaintiffs not be re-hired.

■■ After all the witnesses testified, the Court took the matter under advisement allowing both parties to submit briefs and arguments. This Court, after reviewing all of the evidence proffered and the briefs of both parties, must conclude that the plaintiffs did not sustain their burden of proving that the defendants refused to re-hire the plaintiffs because of their race and color. In fact, not only did the plaintiffs fail to produce sufficient evidence, they produced no evidence to support their allegations. Although it is true, and the defendants have so stipulated, that the Marlin School District is not yet completely integrated, this in itself does not prove that these two plaintiffs were racially discriminated against. On the contrary, the evidence shows that the Marlin School District did not engage in such alleged racial discrimination and that it was making substantial progress toward integration. In such a case as this then, the plaintiffs have the burden of proving that their civil rights were violated, and the failure to sustain such a burden requires the Court to enter a judgment for the defendants. Henry v. Coahoma County Board of Education, 353 F.2d 648 (5th Cir. 1965). Furthermore based on the testimony of Mr. Gray and Mr. Crider, this Court finds that the decision not to re-hire the plaintiffs was well within their discretion, being neither arbitrary nor capricious.

It should be noted before entering judgment that under Articles 2656 and 2686, Vernon's Annotated Texas Statutes, public school teachers are afforded an opportunity to appeal the decisions of school superintendents and local school boards. According to Mr. Gray's testimony, decisions of superintendents have been overruled by the school board after an appeal by an aggrieved teacher. This Court knows of no reason why the plaintiffs failed to exhaust their administrative remedies; this undoubtedly would have been the proper procedure.

In accordance with the above findings, judgment is entered for the defendants.